1   Robert R. Kinas (NV Bar No. 6019)
    Patrick G. Byrne (NV Bar No. 7636)
2   Kelly H. Dove (NV Bar No. 10569)
    Charles E. Gianelloni (NV Bar No. 12747)
3   SNELL & WILMER L.L.P.
    3883 Howard Hughes Parkway, Suite 1100
4   Las Vegas, NV 89169
    Telephone: (702) 784-5200
5   Facsimile:  (702) 784-5252
    Email: rkinas@swlaw.com
6          pbyrne@swlaw.com
           kdove@swlaw.com
7          cgianelloni@swlaw.com
    *Attorneys for Appellee Rep-Clark, LLC*
8

9                    **UNITED STATES DISTRICT COURT**

10                      **DISTRICT OF NEVADA**

11   GYPSUM RESOURCES, LLC, a Nevada            Case No. 2:22-cv-00144-CDS
     limited liability company; and GYPSUM
12   RESOURCES MATERIALS, LLC, a Nevada
     limited liability company,                 **STIPULATION AND ORDER TO**
13                                               **VOLUNTARILY DISMISS APPEAL**
                          Appellants             **WITH PREJUDICE**
14
             v.
15
     REP-CLARK, LLC, a Colorado limited
16   liability company; and Does 1 through 20,
     inclusive,
17                        Appellee

18          Appellants Gypsum Resources, LLC and Gypsum Resources Materials, LLC (together,

19   the "Debtors") and Respondent Rep-Clark LLC ("Rep-Clark") Rep-Clark, LLC ("Rep-Clark" and

20   together with Debtors, the "Parties"), by and through their counsel of record, stipulate and agree

21   to voluntarily dismiss the above-captioned appeal with prejudice pursuant to Fed. R. Bankr. P.

22   8023 as follows:

23          **WHEREAS**, Debtors, Rep-Clark and the Official Committee of Unsecured Creditors of

24   Gypsum Resources, LLC filed a *Joint Motion for Approval of Compromise, Pursuant to Fed. R.*

25   *Bankr. P. 9019, Between Gypsum Resources Materials, LLC, Gypsum Resources, LLC, the*

26   *Official Committee of Unsecured Creditors of Gypsum Resources Materials, LLC, and Rep-*

27   *Clark, LLC, Including Substantive Consolidation of Debtors' Estates* in the jointly administered

28   bankruptcy proceeding, Case No. BK-S-19-14796-mkn, which provided in relevant part that the

Parties agreed to voluntarily dismiss the above-captioned appeal with prejudice. *See* ECF No. 2213 at ¶ 30, attached as **Exhibit 1**.

> **WHEREAS**, the bankruptcy court entered the *Order Granting Joint Motion for Approval of Compromise, Pursuant to Fed. R. Bankr. P. 9019, Between Gypsum Resources Materials, LLC, Gypsum Resources, LLC, the Official Committee of Unsecured Creditors of Gypsum Resources Materials, LLC, and Rep-Clark, LLC, Including Substantive Consolidation of Debtors' Estates* (the "Order"). *See* ECF No. 2246 at ¶ 3, attached as **Exhibit 2**.

> **WHEREAS,** the Parties agree to voluntarily dismiss the above-captioned appeal with prejudice pursuant to the Order, with each Party to bear its or their own costs and attorneys' fees and costs related to the appeal.

> **IT IS SO STIPULATED.**

DATED:  October 13, 2023

SNELL & WILMER L.L.P.

*/s/ Robert R. Kinas*
Robert R. Kinas (NV Bar No. 6019)
Patrick G. Byrne (NV Bar No. 7636)
Kelly H. Dove (NV Bar No. 10569)
Charles E. Gianelloni (NV Bar No. 12747)
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169
Telephone: (702) 784-5200
Facsimile:  (702) 784-5252
*Attorneys for Appellee Rep-Clark, LLC*

DATED:  October 13, 2023

FOX ROTHSCHILD LLP

*/s/ Brett A. Axelrod*
Brett A. Axelrod (NV Bar No. 5859)
Rex D. Garner (NV Bar No. 9401)
1980 Festival Plaza Drive, Suite 700
Las Vegas, NV 89135
Telephone: (702) 262-6899
Facsimile (702) 597-5503
*Attorneys for Appellants Gypsum Resources, LLC and Gypsum Resources Materials, LLC*

## <u>ORDER</u>

Based on the parties' stipulation, this case is dismissed with prejudice, with each party to bear its own costs and fees. The Clerk of Court is kindly instructed to close this case.

_____
UNITED STATES DISTRICT JUDGE

Dated: October 30, 2023

4882-0924-4290

# EXHIBIT 1

Joint Motion for Approval of
Compromise [ECF No. 2213]

BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
*Counsel for Debtors*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| In re | Case No. BK-S-19-14796-mkn |
|---|---|
| GYPSUM RESOURCES MATERIALS, LLC, | Jointly Administered with Case No. BK-S-19-14799-mkn |
| | Chapter 11 |

☐ Affects Gypsum Resources Materials, LLC
☐ Affects Gypsum Resources, LLC
☒ Affects all Debtors

Debtors.

**JOINT MOTION FOR APPROVAL OF COMPROMISE, PURSUANT TO FED. R. BANKR. P. 9019, BETWEEN GYPSUM RESOURCES MATERIALS, LLC, GYPSUM RESOURCES, LLC, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF GYPSUM RESOURCES MATERIALS, LLC AND REP-CLARK, LLC, INCLUDING SUBSTANTIVE CONSOLIDATION OF DEBTORS' ESTATES**

Hearing Date:   October 4, 2023
Hearing Time:   9:30 a.m.

Gypsum Resources Materials, LLC ("GRM") and Gypsum Resources, LLC ("GR" and, together with GRM, "Debtors"), debtors and debtors in possession in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), by and through their counsel of record, Fox Rothschild, LLP, along with the Official Committee of Unsecured Creditors of Gypsum Resources Materials, LLC (the "Committee") and Rep-Clark LLC ("Rep-Clark"), by and through their respective counsel, respectfully submit this joint motion (the "Motion") for entry of an order, pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), approving that certain *Final Term Sheet for Global Settlement,* dated on or about August 25, 2023 (the "Agreement") by and between the Debtors, the Committee, and Rep-Clark (collectively, the "Parties"). The Agreement resolves litigation between the Debtors and Rep-Clark on numerous fronts (as described below) and

147369368.5 6137644.1

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

paves the way for Debtors to pay all their creditors in full and emerge from bankruptcy. A true and correct copy of the Agreement is attached as **Exhibit 1** to the *Declaration of James M. Rhodes* ("Rhodes Declaration") filed concurrently herewith.

By this Motion, the Parties request approval of the Agreement and authorization from the Court to take all actions contemplated by the Agreement (as described below), including the substantive consolidation of the Debtors' estates, which is essential to the efficient effectuation of the parties' settlement. This Motion is made and based upon the following memorandum of points and authorities, the Rhodes Declaration, the papers and pleadings on file with this Court in the Chapter 11 Cases, and any oral argument presented at the time of the hearing of this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### PRELIMINARY STATEMENT

The Agreement is the outcome of a one-day settlement conference attended by the Parties and presided over by Judge Zive, plus negotiations following the settlement conference. It provides a comprehensive resolution of the disputes between the Debtors and Rep-Clark, and authorizes the Committee with consultation from the Debtors and Rep-Clark to conduct a marketing process for all of Debtors' assets, while simultaneously authorizing the Debtors to consummate an alternative transaction (i.e., a refinancing or equity infusion) in lieu of a sale, culminating in a transaction generating sufficient proceeds to pay all allowed claims in full. The Agreement should be approved because it is in the best interests of the Debtors' estates and creditors. See Rhodes Declaration, ¶ 5 & Exhibit 1 thereto.

### II.

### JURISDICTION

1.      This Court has jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

2.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are section 105 of title 11 of the United States Code (the "Bankruptcy Code") and Bankruptcy Rule 9019(a).

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

**III.**

**FACTUAL BACKGROUND**

**A.    General Background.**

4.      On July 26, 2019 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

5.      On August 5, 2019, the Court entered its Order directing the joint administration of the Chapter 11 Cases [Docket No. 38].

6.      The Debtors are continuing in possession of their property and are operating and managing their businesses, as a debtor in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.  See generally Chapter 11 Case Dockets.

7.      The Committee was appointed on August 30, 2019, in GRM's Chapter 11 Case [Docket No. 118].

**B.    Disputes with Rep-Clark**

8.      GR owns over 2000 acres of land (the "Property") in the Southwest part of the Las Vegas valley ("Blue Diamond Hill") upon which sits a gypsum mine (the "Mine"), operated by GR's wholly owned subsidiary, GRM.  See Rhodes Declaration, ¶ 6.

9.      On February 8, 2018, GR entered into the *Gypsum Reserves Agreement and Joint Escrow Instructions* (the "Reserves Agreement") with Rep-Clark.  Under the Reserves Agreement: (a) Rep-Clark paid GR $30 million; and (b) Rep-Clark received in exchange, among other things: (i) title to patented mining claims ("Mining Claims") on certain sub-surface gypsum reserves (the "Reserves") located on the Property, subject to GR's reservation of surface rights; (ii) a monetary interest (equal to $16 million or more) in sales from a certain tract of land in the Property after it was developed and sold (the "Land Royalty"); (iii) the possibility of receiving a $17 million payment (the "QE Payment") if GR's "Royalty Coverage Ratio" became less than certain specified amounts; (iv) the possibility of receiving a "Tonnage Payment" if reserves were not proven; (v) the possibility of receiving a $3 million "Environmental Payment" if government regulators did not issue a no-action letter; and (vi) under the Mining Lease (defined below), certain royalty payments.  The Reserves Agreement was amended twice, including the addition of a cross-default provision, making default

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

3

147369368.5  6137644.1

under the Reserves Agreement, the Mining Lease, or the Land Royalty Agreement (defined below) a default under the other agreements.  See Rhodes Declaration, ¶ 7.

10.     On February 12, 2018, and pursuant to the Reserves Agreement, Rep-Clark and GRM entered into the *Mining Lease Agreement* (the "Mining Lease").  The Mining Lease gives GRM the exclusive right to extract and sell gypsum found within the Mining Claims in exchange for payment of a royalty ("Royalty") on 20 million tons of gypsum.  Among other things, the Mining Lease contains a "Debt to EBITDA Ratio" covenant, applicable both to GRM and GR (which had guaranteed the Mining Lease), triggering termination of the Mining Lease and the obligation immediately to pay all royalties due over the life of Mining Lease (approximately $53 million).  See Rhodes Declaration, ¶ 8.

11.     As part of the Reserves Agreement, Rep-Clark and GR entered into that certain *Land Royalty Agreement* (the "Land Royalty Agreement"), providing, among other things, that a default under the Mining Lease is a default under the Land Royalty Agreement, and requiring GR, upon default, immediately to pay Rep-Clark the Land Royalty.  See Rhodes Declaration, ¶ 9.

12.     GRM made all five quarterly Reserves Payments due through March 2019.  In a letter dated May 2, 2019, Rep-Clark asserted that GR was in violation of the Royalty Coverage Ratio for the year ending December 31, 2018 and demanded the payment of the $17 million QE Payment.  In a letter dated May 24, 2019, Rep-Clark asserted that GR and GRM were in violation of the Debt to EBITDA ratio in the Mining Lease for the year ending December 31, 2018, that the default was not curable, that Rep-Clark had the right to terminate the Mining Lease and that, upon termination, the Compensatory Royalty (approximately $53 million) will be immediately due.  The default under the Mining Lease triggered a default under the Land Royalty Agreement.  See Rhodes Declaration, ¶ 10.

13.     In direct response, Debtors filed for bankruptcy in July 2019.  Since May 2021, Debtors have paid Rep-Clark $6.75 million in adequate protection payments.  See Rhodes Declaration, ¶ 11.

14.     In August 2019, Debtors filed an adversary proceeding seeking a determination that the Reserves Agreement/Mining Lease transaction is for secured financing, not a true sale/leaseback [Adv. P. No. 19-01083-MKN; Docket No. 1].  This Court issued a decision in January 2022 [Adv. P.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1   No. 19-01083-MKN; Docket No. 193], ruling that the Mining Lease is a true lease.  The Debtors
2   promptly appealed the decision to the United States District Court [Adv. P. No. 19-01083-MKN;
3   Docket No. 200] (the "Recharacterization Appeal") and the parties filed their appellate briefs; over
4   one year later, Judge Traum recused herself, and the Recharacterization Appeal is now pending before
5   Judge Silva.  See Rhodes Declaration, ¶ 12.

6          15.    In May 2021, Debtors filed an objection [Docket No. 1254] to Rep-Clark's proofs of
7   claim aggregating $120 million [POC Nos. 19-1, 20-2 & 48-1].  The parties subsequently stipulated
8   that: (a) if the Mining Lease is a true lease, the cure amount owing would not include the
9   Compensatory Royalty, Additional Compensatory Royalty, or Land Royalty Payment [Docket
10  No. 1289]; and (b) Rep-Clark shall have aggregate allowed claims of $62.5 million as of December
11  31, 2021 (subsequently extended by stipulation to March 31, 2022) [Docket No. 1716] (the "Rep-
12  Clark Claim").  See Rhodes Declaration, ¶ 13.

13         16.    In April 2021, Debtors and Rep-Clark entered into a stipulation requiring Debtors to
14  make monthly adequate protection payments to Rep-Clark in the amount of $250,000.00 [Docket No.
15  1243].  Since May 2021, Debtors have paid Rep-Clark $6.75 million in adequate protection payments.
16  See Rhodes Declaration, ¶ 14.

17         17.    In October 2021, the Debtors filed their *Fourth Amended Joint Chapter 11 Plan of*
18  *Reorganization* [Docket No. 1662] (the "Plan"), providing two alternative treatments for the Rep-
19  Clark Claim, each one including the surrender of a portion of Rep-Clark's collateral (real property
20  and/or mineral stockpiles) in satisfaction of the Rep-Clark Claim.  Rep-Clark contends that the Plan
21  cannot be confirmed, arguing that the surrender of its collateral is impermissible under applicable
22  case law.  See Rhodes Declaration, ¶ 15.

23         18.    In October 2021, Debtors also filed a motion to value Rep-Clark's real property
24  collateral [Docket No. 1675] (the "Real Property Valuation Motion") for purposes of determining
25  how much would be required to be surrendered in satisfaction of the Rep-Clark Claim.  In July 2022,
26  this Court entered an Order denying the Real Property Valuation Motion without prejudice [Docket
27  No. 2000], on the grounds that the individual parcels must be appraised separately.  Unless the
28

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

5

Settlement Agreement is approved, Debtors intend to refile the Real Property Valuation Motion.  See Rhodes Declaration, ¶ 16.

19.     In addition, both Rep-Clark and Debtors have commissioned appraisals of the mineral stockpiles, with the expectation of reaching a litigated resolution of their value (the "Stockpile Valuation") unless the Settlement Agreement is approved.  See Rhodes Declaration, ¶ 17.

20.     Rep-Clark and Debtors have stipulated to continue the hearings on Plan confirmation and on the Real Property and Stockpile Valuation eight times, the most recent of which was filed in March 2023 [Docket No. 2151].  See Rhodes Declaration, ¶ 18.

21.     In short, there are numerous outstanding disputes between Debtors and Rep-Clark, including with respect to confirmation of the Plan, the Recharacterization Appeal, the Real Property Valuation Motion, and the Stockpile Valuation (collectively, the "Rep-Clark Disputes").  See Rhodes Declaration, ¶ 19.

**C.     Litigation with Clark County.**

22.     The Plan provides for the payment of general unsecured claims from, among other sources, the proceeds of Debtors' litigation with Clark County, as described below.  Unfortunately, Debtors are not as far along in reaching a resolution in their favor as they had anticipated based on the evidence discovered to date.  See Rhodes Declaration, ¶ 20.

23.     Shortly after acquiring the Blue Diamond Hill, GR initiated zoning and entitlement efforts to pursue commonly sought and approved development rights, which would include increased residential density.  However, bowing to political pressures, both the State of Nevada and Clark County enacted restrictions designed to preclude development of GR's Property.  In 2005, GR filed suit and prevailed in invalidating those efforts.  The County and GR subsequently entered into a binding settlement agreement in 2010, which included a requirement that the County act in good faith pursuant to the Major Projects process.  After initially obtaining tentative approvals for density up to some 5000 residential units, the County returned to its efforts to stifle development.  Those efforts culminated in April 2019, where various County officials, both current and former, maneuvered to prevent a full and fair vote on GR's applications to proceed.  See Rhodes Declaration, ¶ 21.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1    24.    As a result, in May 2019, GR filed a complaint against the County and the County

2  Board of Commissioners (the "Board") in the United States District Court for the District of Nevada

3  (the "District Court").  During the course of discovery, GR uncovered facts supporting its claims and

4  highlighting the impropriety of the County's and individual Board member's actions, which included

5  findings by the Federal Magistrate Judge that evidence was intentionally destroyed in order to conceal

6  improprieties in the County's consideration of GR's applications.  See Rhodes Declaration, ¶ 22.

7    25.    Nonetheless, on May 26, 2023, the District Court granted summary judgment in favor

8  of the County, dismissed GR's federal claims, and announced that it was exercising its discretion to

9  not hear the majority of claims, which were based on state law.  GR is entitled to renew those claims

10  in state court.  GR appealed the District Court's ruling granting partial summary judgment to the

11  County.  See Rhodes Declaration, ¶ 23.

12    26.    On June 7, 2023, GR filed a complaint against the County and the Board based on the

13  state law claims in the District Court for Clark Country, Nevada.  GR's experts had previously

14  calculated its damages resulting from the County's actions as ranging between $1.7 billion and

15  $2.2 billion, the difference depending upon assumptions about development density.  See Rhodes

16  Declaration, ¶ 24.

17  **D.    The Settlement Conference.**

18    27.    In light of the pendency of these cases, the complicated disputes among the parties,

19  and the prospect of many months – if not years – of protracted, costly litigation, the Debtors, Rep-

20  Clark, and the Committee decided in February 2023 that a settlement conference (a "Settlement

21  Conference") was warranted in an effort to resolve the parties' respective claims.  On February 8,

22  2023, a Stipulation to Attend Settlement Conference [Docket No. 2126] was filed by the parties,

23  proposing a Settlement Conference before Bankruptcy Judge Gregg W. Zive on June 22, 2023.

24  Initially, the Stipulation provided that the Debtors and Rep-Clark, but not the Committee, would

25  attend the Settlement Conference in person.

26    28.    On March 22, 2023, the Court entered an order [Docket No. 2150] scheduling the June

27  22, 2023 Settlement Conference before Judge Zive, and ordering the Committee to appear in person.

28  The order further provided for the submission of confidential settlement statements to Judge Zive, as

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

7

well as the exchange of written settlement offers, in advance of the Settlement Conference.  The parties complied in full with this order.

29.    On June 22, 2023, as ordered, the parties attended and participated in the Settlement Conference in Reno, Nevada.  The Settlement Conference lasted approximately five (5) hours, and included an initial joint session before Judge Zive, individual sessions of each of the participating parties with Judge Zive, discussions among the parties without Judge Zive present, and a final joint session with Judge Zive.  Over the course of the day, the parties negotiated and came to an agreement on a framework for the completion of these long-pending cases.  During this final joint session, the Committee's counsel read into the record a settlement term sheet that had been negotiated by the parties.  This term sheet – with several modifications agreed to following the Settlement Conference – forms the basis of the Agreement for which approval is being sought through this Motion.

## IV.

## THE SETTLEMENT TERMS

30.    Pursuant to the Agreement, the Parties have agreed to settle the Rep-Clark Disputes and provide for a sale process run by the Committee intended to facilitate the payment of all allowed claims against the estates within two years.   The settlement has been incorporated into the Agreement, an executed copy of which is attached hereto as Exhibit 1 to the Rhodes Declaration. The key terms of the Agreement are summarized as follows:[1]

1.    The parties agree that a process for the sale (a "Sale Transaction")  of the Debtors' real property holdings (collectively, the "Property"), shall be instituted through an application to employ a broker, this Motion, and a motion under section 363(b) of the Bankruptcy Code to sell property, along with any other necessary and related motions or pleadings (the "Sale Pleadings")..

2.    The Property shall be defined to include the entirety of the Debtors' real property, i.e., the 2200-acre Blue Diamond Hill property, and the Debtors' mining rights and reserves.

3.    The Sale Pleadings shall provide as follows:

a.       The Committee shall take the lead role in conducting the sale process, with all material decisions concerning the process to

---

[1] The following description is qualified in its entirety by the terms of the Agreement, which shall control in the event of any conflict between this description and the Agreement.  Capitalized terms used, but not defined, in this Section shall have the meanings assigned to them in the Agreement.

147369368.5  6137644.1

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

require consultation with the Debtors and Rep-Clark. The Final Term Sheet describes in more detail the Committee's consultation obligations and a dispute resolution procedure in the event the Debtors or Rep-Clark dispute any material decision of the Committee.

b.  The Debtors shall provide all relevant data in a data room set up for the sale process and shall respond timely to all reasonable due diligence requests.

c.  The Committee shall have no more than twenty-four (24) months from the time the Court approves the employment of a broker to conduct the sale process (the "Marketing Period"); any extensions shall require the consent of the parties and an order of the Court.

d.  The broker shall be selected within 60 days of execution of the Final Term Sheet. Each of the Parties shall be permitted to nominate broker candidates, and all Parties shall be entitled to participate in broker vetting and interviews. The Parties shall vote on the broker candidates and no broker shall be retained absent approval of all Parties. In the event that the Parties cannot agree to the retention of a broker, Judge Zive will mediate.

   i.  The broker's retention shall not be terminable by the Debtors alone, but will require the express consent of the Parties. Disputes regarding the termination of a broker shall be mediated, also by Judge Zive.

   ii. If mediation regarding either (i) retention of a broker; or (ii) termination of a broker is unsuccessful, any Party may file a motion with the Bankruptcy Court to have the dispute adjudicated, and the Parties consent to such motion being brought on an emergency basis.

f.  During the Marketing Period, the Debtors and their principal, James Rhodes, shall have the right to seek alternative transactions, including but not limited to a refinancing or an equity raise, ██████████ ███████████████████████████████████████████ Any brokerage agreement shall provide that it may be terminated upon the closing of Alternative Transaction. A

9

147369368.5 6137644.1

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

market-based termination fee payable to the broker in the event of termination may be negotiated into the brokerage agreement.

    i.    Debtors may retain the services of an investment banker to pursue an Alternative Transaction and shall be responsible for the payment of any fees and expenses charged by such investment banker.

    g.    In the event that a Sale Transaction or an Alternative Transaction is not substantially consummated by the close of the Marketing Period, the Parties agree that a Chief Restructuring Officer having relevant mining and land development experience shall be retained to assume the operations of the Debtors and conduct a liquidation of the Debtors' assets.

4. All insider avoidance action claims shall be tolled through the conclusion of the Marketing Period. Upon closing of a Sale Transaction or Alternative Transaction that satisfies unsecured claims in full, such claims shall be deemed waived and released in their entirety

5. The Debtors shall continue to make $250,000 monthly adequate protection payments to Rep-Clark pursuant to the terms of the adequate protection stipulation, and shall be permitted to continue mining operations so long as such payments are made.

6. The Debtors' pending appeal of the judgment of the Bankruptcy Court entered on January 11, 2022 (Case No. 2-22-cv-00144-CDS, D. Nev.) shall be dismissed with prejudice.

7. The parties shall stipulate and request that the Debtors' estates be substantively consolidated.

8. Upon Court approval, an initial *pro rata* distribution shall be made to holders of allowed general unsecured claims in both bankruptcy estates in the amount of $1 million (or such lesser amount as agreed to by the Committee and the Debtors), representing unsecured creditors' share of the Debtors' prior sale of the Industrial Parcel.

See Rhodes Declaration, ¶ 25 & Exhibit 1 thereto.

## V.

## ARGUMENT

**A.**    **Legal Standard.**

31.    "Compromises are a normal part of the process of reorganization." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) (citations and internal quotation marks omitted). Accordingly, Bankruptcy Rule 9019 provides: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

32.     The Court is afforded "great latitude in approving compromise agreements." Woodson v. Fireman's Fund Ins. Co. (In re Woodson), 839 F.2d 610, 620 (9th Cir. 1988).  "The purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims."  Martin v. Kane (In re A&C Props.), 784 F.2d 1377, 1380-81 (9th Cir. 1986).  Moreover, "[t]he law favors compromise and not litigation for its own sake . . . ."  Id. at 1381.  Accordingly, to approve a settlement agreement, a bankruptcy court need not conduct a mini-trial on the merits of the claims or an exhaustive investigation into the underlying dispute between the parties.  United States v. Alaska Nat'l Bank (In re Walsh Constr., Inc.), 669 F.2d 1325, 1328 (9th Cir. 1982).  It is sufficient that the court find that the settlement was negotiated in good faith and that it is fair and equitable.  A&C Props., 784 F.2d at 1381.

33.     The Ninth Circuit has identified four factors that a bankruptcy court must consider in determining whether a proposed settlement agreement is reasonable, fair and equitable:

(a)     the probability of success in the litigation;
(b)     the difficulties, if any, to be encountered in the matter of collection;
(c)     the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and
(d)     the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

A & C Props., 784 F.2d at 1381 (citations omitted).

34.     In considering these factors, bankruptcy courts need only canvass the issues, not decide disputed facts and questions of law.  See Burton v. Ulrich (In re Schmitt), 215 B.R. 417, 423 (B.A.P. 9th Cir. 1997).  "If the court were required to do more than canvass the issue[s], 'there would be no point in compromising; the parties might as well go ahead and try the case.'"  Suter v. Goedert (In re Suter), 396 B.R. 535, 548 (D. Nev. 2008) (quoting 10 Collier on Bankruptcy, ¶ 9019.02).  Additionally, "while creditors' objections to a compromise must be afforded due deference, such objections are not controlling."  A & C Props., 784 F.2d at 1382.  Indeed, the settlement need not be the best that could have been achieved, but only must not fall "below the lowest point in the range of reasonableness."  In re Pac. Gas & Elec. Co., 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004) (quoting In re Drexel Burnham Lambert Group, Inc., 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991) (citations and

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

147369368.5 6137644.1

internal quotation marks omitted)); <u>accord</u> <u>Redwood Trust v. Am. Bldg. Storage, LLC (In re Am.</u> <u>Bldg. Storage, LLC)</u>, No. CC-06-1259-MOPAD, 2007 WL 7532281, at *5 (B.A.P. 9th Cir. Apr. 2, 2007) (not for publication).

**B.     The *A&C Properties* Factors Weigh Heavily in Favor of Approving the Agreement.**

35.     All of the applicable *A&C Properties* factors favor the approval of the Agreement, as discussed below:

- Although Debtors believe that they have a reasonable likelihood of prevailing on the issues, there is always uncertainty involved in litigation.  The Agreement provides Debtors with a prompt resolution of the Rep-Clark Disputes and paves the way for the payment of all claims in full.  <u>See</u> Rhodes Declaration, ¶ 26.

- With respect to any difficulties to be encountered in the matter of collections, the estates assets are not liquid and this agreement is a path forward to obtain sufficient cash proceeds to pay creditors in full and provides creditors with a path certain and a deadline for receipt of payments.  <u>See</u> Rhodes Declaration, ¶ 26.

- Here, "the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it," is arguably the most important factor when analyzing the pending Agreement.  If the Agreement is not approved or does not become effective for any reason, resolution of the pending disputes between Debtors and Rep-Clark will require a substantial investment of Debtors' time and resources, given that the litigation involves claims that are vigorously contested.  <u>See</u> Rhodes Declaration, ¶ 26.

- Finally, when analyzing the paramount interest of the creditors and a proper deference to their reasonable views in the premises, it is of utmost importance to note that the terms of the Agreement were reached in good faith, and with the goal of reaching a compromised resolution for the benefit of all stakeholders.  <u>See</u> Rhodes Declaration, ¶ 26.

36.     Furthermore, the settlement is desirable to the Debtors because while it provides for a mechanism to satisfy all creditor claims in full through a Committee-run sale process, it simultaneously affords the Debtors the flexibility to seek alternative transactions that will not only permit payment in full of creditors, but also, the Debtors' continued ownership of the Property (and therefore, the opportunity to develop the Property consistent with the Debtors' long-held plans).  The settlement further allows the Debtors to retain ownership and control of a key asset:  the Clark County Litigation, which is expressly carved out from the scope of the Committee's sale mandate.

37.     For all of these reasons, it is in the best interest of the Debtors' estates and creditors to proceed with the Agreement.

147369368.5 6137644.1

**C.     The Debtors' Estates Should be Substantively Consolidated.**

38.     A material term of the parties' settlement is the stipulation by the parties that the Debtors' estates be substantively consolidated.  In light of the fact that the sale process will be conducted prior to Plan confirmation, substantive consolidation at this time is important for two reasons:  (i) it alleviates any standing concerns regarding the Committee's conduct of the sale process (since it has only been appointed in the GRM case); and (ii) it ensures that the Committee-led sale process is being conducted for the benefit of *all* unsecured creditors of these estates.

39.     The leading case in the Ninth Circuit on substantive consolidation is In re Bonham, 229 F.3d 750 (9th Cir. 2000).  In Bonham, the Ninth Circuit holds that the Bankruptcy Court has the power to substantively consolidate entities.  Bonham, 229 F.3d at 763.[2]

40.     "The effect of substantive consolidation is, *inter alia*, the pooling of the assets and liabilities of the consolidated entities and the satisfaction of claims from the common fund." In re World Access, Inc., 301 B.R. 217, 272 (Bankr. N.D. Ill. 2003); see also FDIC v. Colonial Realty Co., 966 F.2d 57, 58 (2d Cir. 1992).

41.     This Court's authority to substantively consolidate separate entities is derived from its equitable powers under section 105(a) of the Bankruptcy Code. World Access, 301 B.R. at 272; see also In re Owens Corning, 419 F.3d 195, 216 (3d Cir. 2005) (expressly acknowledging the legitimacy of substantive consolidation); In re Raymond Prof'l Group, Inc., 438 B.R. 130, 138 (Bankr. N.D. Ill. 2010). Substantive consolidation inquiries are fact intensive.  World Access, 301 B.R. at 272.

42.     The Bonham court references In re Augie/Restivo Baking Co., 860 F.2d 515 (2d Cir. 1988) as instructive, and has adopted the Augie/Restivo test for evaluating the propriety of a proposed substantive consolidation.  Bonham, 229 F.3d at 766 ("The Second Circuit's approach is more grounded in substantive consolidation and economic theory; it is also more easily applied.  Thus, we adopt it and utilize it in our analysis of this case.").

---

[2] See also Gill v. Sierra Pacific Constr., Inc. (In re Parkway Calabasas ), 89 B.R. 832 (Bankr.C.D.Cal.1988), aff'd, 949 F.2d 1058 (9th Cir.1991); cf. United States v. Alaska Nat'l Bank of the North (In re Walsh Construction, Inc.), 669 F.2d 1325, 1330 (9th Cir.1982) (recognizing *in dicta* power  to substantively consolidate entities, but noting that power to be "used sparingly"); Anaconda Building Materials Co. v. Newland, 336 F.2d 625 (9th Cir.1964).

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

147369368.5 6137644.1

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

43.     Both <u>Bonham</u> and <u>Augie/Restivo</u> require the consideration of two factors:  (1) whether creditors dealt with the entities as a single economic unit and did not rely on the separate credit of each **or** (2) whether the operations of the Debtors were excessively entangled to the extent that consolidation will benefit all creditors.  <u>Bonham</u>, 229 F.3d at 766.  "The presence of *either factor* is a sufficient basis to order substantive consolidation." *Id.* (emphasis added).–The parties are unaware of there being creditors that commonly dealt with the Debtors as a single economic unit.  Accordingly, in order for substantive consolidation to be approved, the parties must demonstrate that the operations of the Debtors were excessively entangled to the extent that consolidation will benefit all creditors.

44.     Consolidation is justified under the second factor where "the time and expense necessary even to attempt to unscramble [the assets and liabilities is] so substantial as to threaten the realization of any net assets for all the creditors...or where no accurate identification and allocation of assets is possible. In such circumstances, all creditors are better off with substantive consolidation." <u>World Access</u>, 301 B.R. at 274 (internal quotations omitted); <u>see</u> <u>also</u> <u>Chemical Bank v. Kheel</u>, 369 F.2d 845, 848 (2d Cir. 1966) (finding that equity allows consolidation "where the interrelationships of the group are hopelessly obscured and the time and expense necessary to even to attempt to unscramble them is so substantial as to threaten the realization of any net assets for all the creditors").

45.     Here, the parties submit that looking to another commonly utilized substantive consolidation test – that first propounded by the District of Columbia Circuit in <u>In re Auto-Train Corp.</u>, 810 F.2d 270 (D.C. Cir. 1987) – may be instructive in evaluating the extent to which these estates are entangled.  Among other factors, courts employing an <u>Auto-Train</u> analysis look at the following:

    a.   The presence or absence of consolidated financial statements.
    b.   The unity of interest and ownership between various corporate entities.
    c.   The existence of parent and intercorporate guaranties of loans.
    d.   The degree of difficulty in segregating and ascertaining individual assets and liabilities
    e.   The transfer of assets without formal observance of corporate formalities.
    f.   The commingling of assets or business functions
    g.   The profitability of consolidation at a single location.
    h.   The parent owns a majority of the subsidiary's stock.
    i.   The entities have common officers or directors.
    j.   The subsidiary is grossly undercapitalized.
    k.   The subsidiary transacts business solely with the parent.

14

l.  Disregarding the legal requirements of the subsidiary as a separate corporation.
m.  The existence of a single integrated cash management system.
n.  The use of a common name by parent and subsidiary.
o.  The common use of intercompany transactions.

Eastgroup Props. V. S. Motel Ass'n, 935 F.2d 245, 249 (11th Cir. 1991) (further holding that "no single factor . . . is determinative").

46.     Here, numerous indicia of entanglement of the Debtors exist that support the substantive consolidation of the estates.

47.     *Unity of interests and ownership*.  Here, the membership interests of GR are owned 48.946% by the James M. Rhodes Dynasty Trust I, 48.946% by the James M. Rhodes Dynasty Trust II, 1.059% by the James Michael Rhodes Irrevocable Children's Education Trust, and 1.049% by Truckee Springs Holdings, Inc., and GR is the sole member of GRM.  See Rhodes Declaration, ¶ 27.

48.     *Commingling of assets*.  While there has not been technical "commingling" of the Debtors' assets (i.e., that assets of one Debtor have been conveyed to another), there is an inherent difficulty in separating the Debtors' assets, given that the land on which GRM's mining operations sit is owned by GR.

49.     *The existence of parent and intercompany guaranties of loans*.  The senior lender and/or largest creditor of both Debtors is Rep-Clark.  Rep-Clark's claims, liens, and interests pervade the assets of both Debtors as more fully discussed below:

- Rep-Clark owns patented mining claims within the Blue Diamond Hill property, and leases those claims back to GRM under a Mining Lease Agreement dated February 12, 2018.  GR is also a party to the Mining Lease Agreement by virtue of it being the surface owner, and guaranteed all of GRM's obligations thereunder pursuant to a Guaranty of Mining Lease dated November 9, 2018.  *See* Proof of Claim of Rep-Clark (GRM, Claim No. 48).  As such, GR and GRM are co-obligated as to GRM's largest creditor.
- Rep-Clark further has substantial claims, liens, and security interests on the assets of GR, pursuant to a series of agreements between the parties that are more fully set forth in Rep-Clark's proof of claim against GR.  *See* Proof of Claim of Rep-Clark (GR, Claim No. 20).  Specifically, Rep-Clark has liens on three material parcels of GR's real estate holdings, known as the "QE Parcel," "Land Royalty Parcel," and "Environmental Payment Parcel," and its claim is orders of magnitude larger than any other claim asserted against GR.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

15

147369368.5  6137644.1

50.     *Common officers and directors.*  Truckee Springs Holdings, Inc. is the manager of each of GR and GRM.  James Rhodes is the President, Secretary and Treasurer of Truckee Springs Holdings.  See Rhodes Declaration, ¶ 28.

51.     *The parent owns a majority of the subsidiary's stock.*  GRM is wholly-owned by GR. *See* Docket No. 14 (Rhodes Declaration in Support of First-Day Motions).

52.     *The common use of intercompany transactions.*  The Committee alleges that in periods preceding the Petition Date, intercompany transactions, not only between the Debtors, but among the Debtors and other affiliates commonly owned by James Rhodes, were commonplace.  Based on an analysis performed by the Committee, there are myriad examples of (i) cash transfers between Debtor and non-Debtor affiliates, as well as between the Debtors; and (ii) payments made by the Debtors in satisfaction of obligations of non-Debtor entities (or vice versa).  The process of reconciling these transfers and payments, which easily aggregate to over $10 million in relevant periods prior to the Petition Date, would be an enormous, costly undertaking.  See Rhodes Declaration, ¶ 29.

53.     Accordingly, sufficient factors exist for this Court to determine that the estates of GR and GRM are sufficiently intertwined so as to justify the substantive consolidation of the estates.

54.     In addition to the Auto/Train analysis, substantive consolidation is justified in these cases for two other reasons:  first, the consent of the parties; and second, because no creditor will be prejudiced by the proposed substantive consolidation.

55.     *Consent of the Parties.*  In Owens-Corning, the Third Circuit adopted the same two-part test adopted in Bonham and Augie/Restivo, with an important modifier:  those factors need only be considered **in the absence of consent**.  Owens-Corning, 419 F.3d at 211.  Here, while the Debtors, the Committee, and Rep-Clark have not polled each and every creditor in these cases to inquire as to their position, the Debtors note that:  (i) Rep-Clark, the largest (by far) creditor in these cases, holding nearly ninety percent (90%) of the aggregate claims of both estates; (ii) the Committee, representing the interests of the GRM creditors; and (iii) the Debtors each support substantive consolidation.  The Debtors are informed that the Committee inquired as to whether Cashman Equipment Company (one of the most active creditors in these cases) would support substantive consolidation, and Cashman has indicated that it does not object.

147369368.5  6137644.1

56.     Because the Debtors and representatives of the vast bulk of the secured and unsecured claims against both estates support substantive consolidation, and provided that no creditor objects to the requested treatment, the Debtors submit that the Court can approve substantive consolidation without even considering the Bonham factors.

57.     *Lack of prejudice to creditors of both estates.*   Based on the circumstances of these cases, substantive consolidation will not cause any harm to creditors of either of the Debtors' estates, and in fact, will maximize recoveries to all unsecured creditors.   The record makes clear that the value of the assets of GR – even taking as true the valuation submitted by Rep-Clark's appraiser during the course of the parties' litigation (which the Debtors have disputed as undervaluing the property) – far exceed the combined claims of both Debtors, which the Debtors estimate to be approximately $75-80 million in the aggregate.   *See* Appraisal of Glenn M. Anderson of Anderson Valuation Group, Docket No. 1336-1 (valuing GR real property holdings at $275,000,000).   The Debtors dispute the Anderson appraisal.   GR's creditor pool consists predominantly of secured creditors, whose claims will be satisfied out of their collateral before any distributions to unsecured creditors, and therefore, those creditors are at no risk of their recoveries being impacted by the inclusion of the (largely unsecured) GRM creditors in a combined claim pool. Indeed, safeguards are built into the sale process proposed by the Agreement that will mitigate the risk of a prejudicial outcome as a result of substantive consolidation.

58.     For the foregoing reasons, the substantial benefits to be gained from substantive consolidation overwhelmingly support its approval.

# VI.

## CONCLUSION

59.     The Agreement should be approved for the reasons set forth above.   The Agreement is fair and equitable, was negotiated in good faith, and otherwise satisfactorily meets the Ninth Circuit's test for approving compromises of controversies under Bankruptcy Rule 9019.

17

147369368.5 6137644.1

WHEREFORE, for all of the foregoing reasons, the Debtors respectfully request that this Court enter an Order, in the form attached as **Exhibit A** hereto: (i) approving the Agreement; (ii) authorizing the Debtors to take all actions contemplated by the Agreement; and (iii) granting such further relief as the Court deems just and proper.

Dated this 5th day of September, 2023.

**FOX ROTHSCHILD LLP**

By      */s/ Brett A. Axelrod*
    BRETT A. AXELROD, ESQ.
    Nevada Bar No. 5859
    1980 Festival Plaza Drive, Suite 700
    Las Vegas, Nevada 89135
*Counsel for Debtor*

**TUCKER ELLIS LLP**

By      */s/ Thomas R. Fawkes*
    THOMAS R. FAWKES, ESQ.
    *Pro Hac Vice*
    233 S. Wacker Dr., Suite 6950
    Chicago, Illinois 60606
*Counsel for the Official Committee of Unsecured Creditors of Gypsum Resources Materials, LLC*

**BLACK & WADHAMS**

By      */s/ Brigid M. Higgins*
    BRIGID M. HIGGINS, ESQ.
    Nevada Bar No. 5990
    10777 West Twain Avenue, Suite 300
    Las Vegas, Nevada 89135
*Counsel for the Official Committee of Unsecured Creditors of Gypsum Resources Materials, LLC*

**SNELL & WILMER, L.L.P.**

By      */s/ Robert R. Kinas*
    ROBERT R. KINAS, ESQ.
    Nevada Bar No. 6019
    3883 Howard Hughes Pkwy., Suite 1100
    Las Vegas, NV  89169
*Counsel for Rep-Clark, LLC*

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

147369368.5  6137644.1

# EXHIBIT A

# PROPOSED ORDER

BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
*Counsel for Debtors*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>GYPSUM RESOURCES MATERIALS, LLC,<br><br>☐ Affects Gypsum Resources Materials, LLC<br>☐ Affects Gypsum Resources, LLC<br>☒ Affects all Debtors<br><br>Debtors. | Case No. BK-S-19-14796-mkn<br><br>Jointly Administered with<br>Case No. BK-S-19-14799-mkn<br><br>Chapter 11<br><br>**ORDER GRANTING JOINT MOTION FOR APPROVAL OF COMPROMISE, PURSUANT TO FED. R. BANKR. P. 9019, BETWEEN GYPSUM RESOURCES MATERIALS, LLC, GYPSUM RESOURCES, LLC, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF GYPSUM RESOURCES MATERIALS, LLC AND REP-CLARK, LLC, INCLUDING SUBSTANTIVE CONSOLIDATION OF DEBTORS' ESTATES**<br><br>Hearing Date:    October 4, 2023<br>Hearing Time:    9:30 a.m. |

147369368.5  6137644.1

1

The Court, having reviewed and considered Joint Motion of the Debtors, the Official Committee of Unsecured Creditors of Gypsum Resources Materials, LLC, and Rep-Clark, LLC for an order, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, for approval of the Agreement as more fully set forth in the Motion; and upon consideration of the *Declaration of James M. Rhodes* in support thereof; and the parties having appeared by and through their respective counsel, and all other appearances having been noted on the record; the Court having stated its findings of fact and conclusions of law on the record at the hearing on the Motion, which findings of fact and conclusions of law are incorporated herein by this reference in accordance with Federal Rule of Civil Procedure 52, as made applicable by Bankruptcy Rule 9014; and it appearing that the relief requested is warranted on the grounds, among others, that the Agreement: (a) was negotiated in good faith and is fair and equitable, (b) contemplates an immediate resolution of the Rep-Clark Disputes on terms favorable to the Debtors and their estates; (c) provides for a structured sale process designed to result in the payment of all claims in full within two years; (d) avoids litigation which could prove to be protracted and expensive; and (e) is in the best interests of the Debtors, the estates and its creditors because the Agreement resolves the Rep-Clark Disputes without the incurrence of additional expense and paves the way for the Debtors to emerge from bankruptcy after payment of all claims in full; after due deliberation and sufficient cause appearing therefor, it is hereby:

**ORDERED** that the Motion is GRANTED; and

**IT IS FURTHER ORDERED** that:

1. The Agreement is approved;

2. The substantive consolidation of the estates of Debtors Gypsum Resources, LLC and Gypsum Resources Materials, LLC is hereby approved;

3. The Debtors are authorized to take all actions contemplated by the Agreement; and

4. This Court shall, and hereby does, retain jurisdiction with respect to all matters arising from or related to the implementation and interpretation of this Order.

147369368.5  6137644.1

Prepared and Respectfully Submitted by:

**FOX ROTHSCHILD LLP**

By___*/s/Brett A. Axelrod*_____
    BRETT A. AXELROD, ESQ.
    Nevada Bar No. 5859
    1980 Festival Plaza Drive, Suite 700
    Las Vegas, Nevada 89135
    Telephone: (702) 262-6899
*Counsel for Debtors*
APPROVED/DISAPPROVED:
**OFFICE OF THE UNITED STATES TRUSTEE**

BY: _____
    [        ]
    Trial Attorney for United States Trustee,
    Tracy Hope Davis

## **LR 9021 CERTIFICATION**

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

☐  The court waived the requirement of approval under LR 9021(b)(1).

☐  No party appeared at the hearing or filed an objection to the motion.

☐  I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

_____ , Office of the          _Approved / Disapproved_
United States Trustee

☐  I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objection to the form or content of the order.

# # #

147369368.5  6137644.1

# EXHIBIT 2

Order Granting Joint Motion for
Approval of Compromise
[ECF No. 2246]





Honorable Mike K. Nakagawa
United States Bankruptcy Judge

Entered on Docket
October 06, 2023

BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
*Counsel for Debtors*

### UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No. BK-S-19-14796-mkn |
| GYPSUM RESOURCES MATERIALS, LLC, | Jointly Administered with Case No. BK-S-19-14799-mkn |
| ☐ Affects Gypsum Resources Materials, LLC<br>☐ Affects Gypsum Resources, LLC<br>☒ Affects all Debtors | Chapter 11 |
| | **ORDER GRANTING JOINT MOTION FOR APPROVAL OF COMPROMISE, PURSUANT TO FED. R. BANKR. P. 9019, BETWEEN GYPSUM RESOURCES MATERIALS, LLC, GYPSUM RESOURCES, LLC, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF GYPSUM RESOURCES MATERIALS, LLC AND REP-CLARK, LLC, INCLUDING SUBSTANTIVE CONSOLIDATION OF DEBTORS' ESTATES** |
| | Hearing Date:     October 4, 2023<br>Hearing Time:     9:30 a.m. |

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

150153711.1

1

The Court, having reviewed and considered Joint Motion of the Debtors, the Official Committee of Unsecured Creditors of Gypsum Resources Materials, LLC, and Rep-Clark, LLC for an order, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, for approval of the Agreement as more fully set forth in the Motion; and upon consideration of the *Declaration of James M. Rhodes* in support thereof; and the parties having appeared by and through their respective counsel, and all other appearances having been noted on the record; the Court having stated its findings of fact and conclusions of law on the record at the hearing on the Motion, which findings of fact and conclusions of law are incorporated herein by this reference in accordance with Federal Rule of Civil Procedure 52, as made applicable by Bankruptcy Rule 9014; and it appearing that the relief requested is warranted on the grounds, among others, that the Agreement: (a) was negotiated in good faith and is fair and equitable, (b) contemplates an immediate resolution of the Rep-Clark Disputes on terms favorable to the Debtors and their estates; (c) provides for a structured sale process designed to result in the payment of all claims in full within two years; (d) avoids litigation which could prove to be protracted and expensive; and (e) is in the best interests of the Debtors, the estates and its creditors because the Agreement resolves the Rep-Clark Disputes without the incurrence of additional expense and paves the way for the Debtors to emerge from bankruptcy after payment of all claims in full; after due deliberation and sufficient cause appearing therefor, it is hereby:

**ORDERED** that the Motion is GRANTED; and

**IT IS FURTHER ORDERED** that:

1. The Agreement is approved;[1]

2. The substantive consolidation of the estates of Debtors Gypsum Resources, LLC and Gypsum Resources Materials, LLC is hereby approved;

3. The Debtors, the Committee, and Rep-Clark, as applicable, are authorized to take all actions contemplated by the Agreement;

---

[1] The Allowed Amount of Rep Clark's secured claim will be determined by the court at a later date pursuant to the formula set forth in the *Ninth Stipulation to Vacate Confirmation Hearing and Related Deadlines on Plan Confirmation and to Set Status Hearings* [ECF No. 22323].

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

150153711.1

4.   Any distribution of the Segregated Funds shall only be made in accordance with a confirmed chapter 11 plan in these cases, or by subsequent order of this Court; and

5.   This Court shall, and hereby does, retain jurisdiction with respect to all matters arising from or related to the implementation and interpretation of this Order.

Prepared and Respectfully Submitted by:

**FOX ROTHSCHILD LLP**

By_____*/s/Brett A. Axelrod*_____
   BRETT A. AXELROD, ESQ.
   Nevada Bar No. 5859
   1980 Festival Plaza Drive, Suite 700
   Las Vegas, Nevada 89135
   Telephone: (702) 262-6899
*Counsel for Debtors*

APPROVED:

**OFFICE OF THE UNITED STATES TRUSTEE**

By: ___/s/Edward M. McDonald, Jr.___
   Edward M. McDonald, Jr.
   Trial Attorney for United States Trustee,
   Tracy Hope Davis

APPROVED:

**TUCKER ELLIS LLP**

By: ___*/s/Thomas R. Fawkes*_____
   Thomas R. Fawkes, Esq.
   233 South Wacker Drive, Suite 6950
   Chicago, Illinois 60606
   *Counsel for the Official Committee*
   *of Unsecured Creditors*

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

150153711.1

3

APPROVED:

**SNELL & WILMER L.L.P.**

By: _____/s/ Robert R. Kinas_____
　　　ROBERT R. KINAS, ESQ.
　　　Nevada Bar No. 6019
　　　3883 Howard Hughes Pkwy., Suite 1100
　　　Las Vegas, Nevada 89169
*Counsel for Rep-Clark, LLC*

### CERTIFICATION OF COUNSEL PURSUANT TO LOCAL RULE 9021

In accordance with Local Rule 9021, counsel submitting this document certifies as follows:

☐　The Court has waived the requirement of approval in LR 9021(b)(1).

☐　No party appeared at the hearing or filed an objection to the motion.

☒　I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

Edward M. McDonald Jr.　　　　　　Approved
Trial Attorney
*Office of the United States Trustee*

Thomas R. Fawkes, Esq.　　　　　　Approved
Tucker Ellis LLP
*Counsel for the Official Committee*
*Of Unsecured Creditors*

Robert R. Kinas, Esq.　　　　　　　　Approved
Snell & Wilmer L.L.P.
*Counsel for Rep-Clark, LLC*

☐　I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

# # #

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

150153711.1